Phillip MILLER and David Deakyne, Partners In M & M Associates, a Partnership of the State of Delaware, Appellants,

v.

The BOARD OF ADJUSTMENT OF the TOWN OF DEWEY BEACH, Delaware, a Municipal Corporation, Appellee.

Superior Court of Delaware, Sussex County.

Submitted: Aug. 27, 1986.
Decided: Nov. 17, 1986.

Robert C. Wolhar, Jr., of Wolhar & Associates, P.A., Georgetown, for appellants.

Francis C. Gondek, of Terry, Jackson, Terry & Wright, Georgetown, for appellee.

## OPINION

CHANDLER, Judge.

This is an appeal from the decision of the Board of Adjustment of the Town of Dewey Beach affirming the denial of certificates of occupancy by the town's building inspector to Dr. David Deakyne. The basis for the denial of the certificates is two violations of the town's zoning code, a side-yard setback encroachment and a density violation. The first violation has been acknowledged by Dr. Deakyne. The second is contested and forms the factual basis of this appeal.

The facts of this case are as follows. Dr. Phillip Miller owned parcels 198, 199, 200 and 202 on the north side of Read Street, Dewey Beach. Dr. David Deakyne owned parcel 201, which was improved by two cottages. All the parcels are 50 feet by 125 feet in size. In late 1984 or early 1985 Dr. Miller and Dr. Deakyne agreed to exchange parcels 201 and 202 so that Dr. Miller would have a contiguous series of parcels for a development project. In addition, they agreed that Dr. Miller would defray the expense of moving the two cottages from parcel 201 to 202, including the costs of the building permit and new foundations.

The two cottages contain three dwelling units, one in the front cottage and two in the rear cottage. A dwelling unit is a definitional term used for calculating a building's compliance with the height, area and bulk requirements of the town's zoning code. Three dwelling units on a lot 50 feet by 125 feet in size exceeds the requirement of 2400 sq. ft. per unit for multi-family dwellings in a resort residential district. Comprehensive Zoning Code § 502.7, *Town of Dewey Beach Municipal Code*, ch. 14 (1985). However, since the cottages were built before the zoning code was enacted, they constitute a legal nonconforming use under the grandfather clause of the code. *Id.* § 1001(a).

On November 9, 1984, the Sussex County Engineer's office issued upon the application of a plumber a permit to disconnect the water and sewer pipe for a "single family dwelling" on lots 31 and 33 (parcel 201). Exhibit No. 6, Docket Item No. 4, *Miller v. Board of Adjustment*, C.A. No. 86A–JA1 (Sussex County). The cottages, however, were assessed for three estimated dwelling units ("EDUs") by the Sussex County Water and Sanitary District, although after the relocation to parcel 202 they were mistakenly assessed at two EDUs. Exhibit No. 14, *Id.* On March 7, 1985 the Department of Natural Resources and Environment Control's Division of Soil and Water Conservation issued a letter of approval to Dr. Miller, on behalf of M.M. Associates, a partnership consisting of Drs. Miller and Deakyne, for the relocation of "two (2) single structures" onto lots 27 and 29 (parcel 202). Exhibit No. 7, *Id.* On March 11, 1985, Donna West, on behalf of M.M. Associates, applied for a building permit to move "two houses" from parcel 201 to 202. Exhibit No. 2, *Id.* On March 13, 1985, the building inspector issued a building permit to Dr. Miller to move "2 existing houses from parcel 201 to 202." Exhibit No. 2, *Id.* The record from the hearing indicates that both Miss West and the inspector were acting in good faith under the assumption that each cottage was a single family dwelling, neither party having inspected the insides of the houses before the

permit was issued. Record at 18, Docket Item No. 5, *Id.*

After the houses were moved, the building inspector visited the site and discovered that an exterior stairway on the east side of the rear two-story cottage encroached on the minimum required side yard setback of six feet. He declined to issue certificates of occupancy for the two cottages because of this violation, pursuant to the Comprehensive Zoning Code § 401: "No building structure, or land shall hereafter be used and no buildings, structure, or part thereof shall be erected, reconstructed, converted, enlarged, *moved,* or structurally altered unless in conformity with the regulations as set forth in this chapter." (Emphasis added).

Several months passed while the parties considered appropriate measures to correct this encroachment. The building inspector again visited the rear building and discovered that it consisted of two apartments, one on each floor, with no interior stairway. On October 11, 1985, he notified the appellants of this density violation. In early November, he informed Dr. Deakyne that he would not be permitted to maintain three dwelling units on his parcel because house relocations were considered new construction and must conform to the zoning code. The inspector suggested converting the rear cottage to a single family dwelling with one kitchen and an interior stairway.

On November 6, 1985, Dr. Deakyne decided to appeal the inspector's decision to the Board of Adjustment. A public hearing was held December 11, 1985 at which time the Board voted four to one to deny the appeal. Since no showing of hardship had been made, the Board also denied a request for a variance.[1]

This Court's scope of review on appeal from a Board of Adjustment decision is limited to the correction of errors of law and to determining whether or not substantial evidence exists in the record to support the Board's findings of facts and conclusions of law. *Janaman v. New Castle County Board of Adjustment,* Del.Super., 364 A.2d 1241 (1976). Because I find that, although the Board made some errors of law, there is substantial evidence to support its legal conclusions, the decision below is affirmed.

The appellants' argument on appeal to the Board and this Court is primarily one of estoppel. Dr. Deakyne had agreed to exchange parcels with Dr. Miller on the condition that he would not be burdened by any expense or change in the nature of his property other than location. Record at 16, Docket Item No. 5, *Miller.* Thus, Dr. Deakyne would not have agreed to the exchange and Dr. Miller would not have undertaken to move the houses at considerable expense had the building permit not been issued. Since the building inspector did issue a building permit, albeit as a result of a mistake on the application, the appellants urge that Dr. Deakyne now has a vested right in the permit and the inspector should be estopped from denying the certificates of occupancy.

The Board's opinion, denying the appeal, is a simple statement that "no reasons were shown to overrule the Building Inspector's decision or the code which requires any buildings being moved on to a lot to be in conformance with zoning code." Docket Item No. 4, *Id.* Upon review of the transcript of the public hearing, the Board's reasoning becomes apparent. First, the Board concluded that in order to overrule the inspector's decision, it would be necessary to find that there had not been a zoning violation; in other words, the Board believed it would have to interpret the code to state that if someone moves an existing house from an adjacent lot across a lot line, it is not necessary to comply with the code. Record at 46–48, Docket Item No. 5, *Id.* The Board was reluctant to establish such a precedent. Record at 46–47, *Id.* Secondly, the Board concluded that

---

1. During the hearing, Dr. Miller retracted every mention of hardship he had made. Record at 21 & 48, Docket Item No. 5, *Miller.*

the zoning ordinance was clear, that the burden was on the landowner to research the law and that the mistake in issuing the building permit was inconsequential. Record at 50–51, *Id.*

The Board erred in concluding it would be necessary to overrule or reinterpret the code in order to overrule the building inspector's decision. There are two legal theories, the doctrines of equitable estoppel and vested rights, that enable landowners in certain situations to continue the construction or use of buildings which violate zoning ordinances. *See* 3 Rathkopf, *The Law of Zoning and Planning,* § 45.05(b) (4th ed. 1986). However, upon applying these theories to this case, I find there is substantial evidence in the record to support the Board's second legal conclusion.

The doctrines of equitable estoppel and vested rights, although theoretically distinct, are often applied interchangeably by courts throughout the country to reach the same results in similar factual situations. *Allen v. City and County of Honolulu,* Hawaii Supr., 58 Hawaii 432, 571 P.2d 328, 329 (1977).

> As stated in Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes,* 1971 Urban L.Ann. 63 at 64–65: ... The defense of estoppel is derived from equity, but the defense of vested rights reflects principles of common and constitutional law. Similarly their elements are different. Estoppel focuses on whether it would be inequitable to allow the government to repudiate its prior conduct; vested rights upon whether the owner acquired real property rights which cannot be taken away by government regulation. Nevertheless, the courts seem to reach the same results when applying these defenses to identical factual situations.

*Id.* at 329 (citations omitted).

Although the majority of states entertain claims of equitable estoppel against government entities engaged in zoning or land use regulation, Delaware courts have recognized the doctrine in only a few cases and have never upheld the defense. *See Amico v. New Castle County,* D.Del., 101 F.R.D. 472, 484–485 (1984) ("Finally, the Delaware courts have qualified the general doctrine of equitable estoppel by recognizing the proposition that estoppel should not be invoked where to do so would operate to defeat the effective operation of a policy adopted to protect the public .... Since the application of estoppel in this case would have some effect on the county's policy of protecting children against pornography in that it would permit operation of an adult entertainment establishment within 2800 feet of a school or a church, it seems unlikely that the Delaware courts would hold the defendants to be equitably estopped."); *Council of South Bethany v. Sandpiper Development Corp.,* Del.Ch., C.A. No. 935, Memorandum Opinion at 17–18, Jacobs, V.C. (Sept. 4, 1986) [Available on WESTLAW, DE–CS database] ("Nor has the town been shown to have acted in such a manner as to be equitably disqualified from applying its ordinance to Sandpiper." (Where the defendant was aware of the proposed zoning ordinance three months before it recorded the subdivision plot and six months before it acquired the land to be divided)); *Commissioners of Lewes v. Blankenburg,* Del.Ch., 161 A.2d 424, 426 (1960) (defendant's claim of estoppel was not supported where there was no basis for reliance on the action or inaction of the commissioners as a body); *Papaioanu v. Commissioners of Rehoboth,* Del.Ch., 20 A.2d 447, 452 (1941) (In order for any rule involving the principles of estoppel to apply, the fact that the complainants were prejudiced by the acts of the commissioners of the town must clearly appear from the pleadings).

■ A District of Columbia appellate court has outlined the elements that must be proved in order to raise a defense of equitable estoppel against the enforcement of a zoning regulation: "(1) that a party, acting in good faith, (2) on affirmative acts of a municipal corporation, (3) makes ex-

pensive and permanent improvements in reliance thereon, and (4) the equities strongly favor the party seeking to invoke the doctrine." *Saah v. District of Columbia Board of Zoning*, D.C.App., 433 A.2d 1114, 1116 (1981) (citations omitted). The issuance of a building permit by an authorized municipal agent constitutes such an affirmative act. *Id.* at 1116.

However, traditionally courts have held that the doctrine of equitable estoppel may not be invoked by the holder of an illegal or invalid building permit even though there was good faith on his part and financial injury upon revocation of the permit. Annot., 6 A.L.R.2d 960, 961 (1949); *See City of Chicago v. Grendys Building Corp.*, Ill.App., 4 Ill.App.3d 634, 281 N.E.2d 708, 712 (1972) (citations omitted) ("Here the City of Chicago approved construction plans which did not provide for a loading berth of required dimensions and issued a building permit to defendants. It is true ... that these actions by the city were alone insufficient to create an estoppel situation ...."); *Snyder v. Waukesha County Zoning Board of Adjustment*, Wis.Supr., 74 Wis.2d 468, 247 N.W.2d 98, 103 (1976) ("The rule of law in this state is clear that no such estoppel may arise against a municipality for the unauthorized acts of its officers ... Even if the inspector issued a building permit such a permit would have been void as issued for a structure which is forbidden by the ordinance.").

In situations where the honesty and good faith of the permittee, as well as the administrative official, are apparent, a minority of states have applied a countervailing doctrine of "honest error" to ameliorate the harshness of the traditional rule. 3 Rathkopf, *supra* p. 6, § 45.05(3)(d); *See Town of West Hartford v. Rechel*, Conn.Supr., 190 Conn. 114, 459 A.2d 1015, 1020 (1983) ("It is only when the municipal agent acts in good faith, within the scope of his authority, but in error, that the occasion for invocation of estoppel can arise."); *Jantausch v. Borough of Verona*, N.J.Super., 41 N.J.Super. 89, 124 A.2d 14, 17 (1956),

*aff'd*, 24 N.J. 326, 131 A.2d 881 (1957) ("I have no doubt as to the good faith of the plaintiffs and the building inspector. Additionally, whether the building inspector's view of the ordinance was sound or not cannot be said to be unreasonable. There should be some point at which the owner of property who acts in such circumstances becomes secure."). In general, however, the courts are extremely cautious in invoking the doctrine of estoppel in these cases unless there are exceptional circumstances which make it highly inequitable or oppressive to enforce the regulations. *See Zoning Commission v. Lescynski*, Conn.Supr., 188 Conn. 724, 453 A.2d 1144 (1982).

■ There is substantial evidence in the record of this case to support the Board's conclusion that the building inspector should not be estopped from enforcing the zoning code. The permit was invalidly issued in that it authorized the removal of two houses containing three dwelling units to an adjacent parcel in clear violation of the code's area requirement. While the record supports the Board's findings that Miss West and the building inspector acted in good faith in applying for and issuing the permit, the circumstances are not sufficiently exceptional to justify a deviation from the traditional rule followed in a majority of states. The error here was a simple one of omission: the failure of the agent of the landowner to determine whether the house was a single family or multi-family dwelling and the failure of the inspector to verify the information on the application. Although there was little or no evidence that the public would be injured if an estoppel were allowed, Record at 49, Docket Item No. 5, *Miller; see Saah*, 433 A.2d at 1117, there was evidence that the cost of compliance with the code would not be oppressive. Rather than having to remove the structure, Dr. Deakyne would only be compelled to convert the rear cottage into a single family dwelling. He testified that, in addition to the cost of a renovation, he would probably lose less than $4,000 in rental income per season.

Record at 40, *Id.* The appellants' argument of equitable estoppel is unavailing.

The appellants also argue that upon moving the two buildings they acquired a vested right in the building permit that entitles them to continue the use of the buildings unchanged. The basic rule of vested rights followed in Delaware and the majority of states applies in the context of a defense by the holder of a valid building permit issued prior to the enactment or amendment of a zoning ordinance:

> The acquisition of vested rights requires .... [a]s of the time of the zoning change, there must have been a substantial change of position, expenditures, or incurrence of obligations, made lawfully and in good faith under the permit, before the landowner becomes entitled to complete the construction and to use the premises for a purpose prohibited by a subsequent zoning change.

*Shellburne, Inc. v. Roberts,* Del.Supr., 224 A.2d 250, 254 (1966); *see* 4 Rathkopf, *supra* p. 6, § 50.03.

■ The general rule, however, is that a permit issued illegally, or in violation of the law, or under a mistake of fact does not confer a vested right upon the person to whom it is issued, even though that person has made substantial expenditures in reliance thereon. *Garnick v. Zoning Hearing Board of Bridgeton Township,* Pa. Commw., 58 Pa.Cmwlth. 92, 427 A.2d 310, 312 (1981). The underlying principle which supports this rule is that every person is presumed to know the extent of power of the municipal authorities. Annot., 6 A.L.R.2d 960, 964 (1949).

In several states, however, the doctrine of "honest error" has also been applied as an exception to the general rule of vested rights:

> In these situations which involve the erroneous interpretation of the ordinance and a mistaken application of its provisions in a particular situation, as well as situations in which the structures were mistakenly located in relation to lot lines because of ignorance of where lot lines were or where the center of the road was located or any other physical error honestly arrived at by a landowner, or his builder or architect, and negligently overlooked by a building inspector, the doctrine of "honest error" has sometimes been applied.

4 Rathkopf, *supra* p. 6, § 50.04 at 50–54. Pennsylvania courts apply a well developed doctrine of honest error to the defense of vested rights in the context of land use regulation. *Petrosky v. Zoning Hearing Board of Upper Chichester,* Pa.Supr., 485 Pa. 501, 402 A.2d 1385 (1979); *Garnick,* 427 A.2d at 310; *Department of Environmental Resources v. Flynn,* Pa.Commw., 21 Pa.Cmwlth. 264, 344 A.2d 720 (1975). In *Flynn,* a landowner had hired a soil scientist at the suggestion of the sewage enforcement officer to conduct soil and percolation tests on his property. 344 A.2d at 721. On the basis of the test results, a sewage disposal system permit was issued. Upon presenting this permit the landowner was issued a building permit. After construction of his home was substantially completed, officials from the Department of Environmental Resources conducted independent tests on his property, determined that a sewage system would violate their regulations, ordered the landowner to stop work and attempted to have the township revoke his building permit. The court made an exception to the general rule that a building permit mistakenly issued creates no vested rights and held that under the facts of this case the landowner had acquired vested rights to the sewer and building permits. *Id.* at 724.

■ The Pennsylvania court then outlined five factors that must be weighed in determining whether one has acquired vested rights as a result of a building permit erroneously issued by the government:

(1) his [the applicant's] due diligence in attempting to comply with the law;

(2) his good faith throughout the proceedings;

(3) the expenditure by him of substantial unrecoverable funds;

(4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;

(5) the insufficiency of evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

*Id.* at 725.

Delaware and a majority of other jurisdictions, however, do not apply the doctrine of honest error to the defense of vested rights. *See* 4 Rathkopf, *supra* p. 6, § 50.-04 and supplement. Under the traditional rule, the appellants have not acquired any vested rights as a result of moving two cottages in reliance upon the erroneously issued building permit. Unlike the landowner in *Flynn*, who relied on the expertise of a hired consultant, the record shows that Dr. Deakyne knew his property contained three dwelling units. Docket Item No. 4, *Miller*. Had he filed the same application for the building permit, he would have been acting in bad faith. *See Garnick*, 427 A.2d at 310. The fact that an agent acted for Drs. Deakyne and Miller should not shift the onus from the principals nor does it justify an exception to the traditional rule in this case. The appellants' argument on the ground of vested rights is also unavailing.

As there was no showing of hardship in the record, the Board's decision to deny the appeal and the request for a variance is affirmed.

IT IS SO ORDERED.