IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| Tina C. Werking, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) C.A. S24A-06-001 MHC |
| | ) |
| Board of Adjustments, | ) |
| | ) |
| Appellee. | ) |
| | ) |

**OPINION**
Submitted:  January 10, 2025
Decided:  February 21, 2025

On Appeal from The Sussex County Board of Adjustments, Decision of the Board
is **AFFIRMED.**

James P. Sharp, Esquire, Moore & Rutt, P.A., Attorney for Appellee

Tina Werking, *Pro Se*

**CONNER, J.**

Before the court is Tina C. Werking's ("Appellant") *pro se* appeal of a decision by the Sussex County Board of Adjustment ("the Board"). Appellant received a building permit to build a deck, shed, pool, and fence to surround the pool. The building permit did not include a necessary setback variance, but Planning & Zoning officials later added that information, a fact Appellant did not become aware of until the Board hearing. Appellant did request a variance regarding the height of the fence which is the issue of this appeal.

The Board ultimately granted a variance allowing the shed to vary from the front yard setback requirement and allowing a pool fence to exceed the 3.5 feet maximum height requirement. However, the Board denied Appellant's requested fence height variance of 6 feet, instead only allowing the fence to be 4.5 feet tall. Appellant appeals the Board's partial denial of the variance regarding the fence height on the grounds that: (1) the Board based its decisions on purely aesthetic reasons; (2) that she relied upon the building permit which did not flag the need for variance and thus Sussex County should be estopped from denying her variance requests; and (3) her due process rights were violated when Sussex County officials altered her building permit without informing her until the Board hearing.

For the reasons stated in this opinion the Board's decision is **AFFIRMED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant is the owner of property located at 32813 Bauska Drive, Ocean View, Delaware.[1] In May 2023, Appellant acquired a building permit to build a pool, shed, and six-foot tall cedar fence.[2] The building permit setback requirement section was left blank.[3] After construction finished, Appellant had it inspected in October 2023, where the inspector noted that there were setback issues that required a variance.[4] The building permit did not initially include the setback requirements, but Planning & Zoning officials later added that information without informing Appellant.[5]

> The Sussex County Zoning Code requires that:
>
> [a]ny fence or wall for residential use, not more than 3 1/2 feet in height, may project into or enclose any required front or side yard to a depth from the street line equal to the required depth of the front yard. Any fence, hedge or wall for residential use may project into or enclose other required yards, provided that such fences, hedges and walls do not exceed a height of seven feet.[6]

However, it also provides that "[e]very swimming pool shall be protected by a safety fence or barrier at least four feet in height. . . ."[7]

---

[1] *Id.* at 3–4, 5–6.
[2] Brief of Appellant (hereinafter "Opening Br.") at Section II; Answering Br. at 4, 7.
[3] Opening Br. at Index B.
[4] *Id.* at Section II.
[5] Opening Br. at Section II; Answering Br. at 6.
[6] Sussex Cty. C. § 115-185(c).
[7] Sussex Cty. C. § 115-185(d).

3

On February 1, 2024, Appellant filed an application with the Board for a variance for the fence height.[8]  The Board held a hearing where Richard Braida, a neighbor and homeowners' association member, testified that the six foot tall fence was uncharacteristic of the neighborhood and noted that since the fence is wooden, the fence height issue could be remedied by a simple cut.[9]  Appellant argued that cutting the fence would be costly and that a shorter fence would not be sufficient for privacy concerns, but provided no facts contrary to Mr. Braida's testimony.[10]  A Planning & Zoning official testified about the building permit, including how the official altered the permit after the setback issue was flagged.[11]  The hearing testimony was the first time Appellant became aware of the permit modification.[12]  Appellant was refunded her variance application fee of $425 due to "mis-information, or lack there of [sic] information, on your building permit that did not include setback requirements."[13]

On May 18, 2024, the Board issued a written decision approving all requested variances including the modification of the fence height to 4.5 feet.[14]  On June 20, 2024, Appellant filed an appeal.  On September 27, 2024, Appellant filed her

---

[8] Answering Br. at 4–5.
[9] *Id.* at 6–7.
[10] *Id.* at 7.
[11] Opening Br. at Section II; Answering Br. at 6.
[12] Opening Br. at Section II.
[13] *Id.* at Index G.
[14] Answering Br. at 7–8.

Opening Brief, titled "Brief of Appellant." On December 9, 2024, the Board filed an Answering Brief. On January 10, 2025, Appellant filed a Reply Brief.

On appeal, Appellant raises three arguments: (1) the Board based its decisions on purely aesthetic reasons; (2) that Appellant relied upon the building permit which did not flag the need for variance and thus Sussex County should be estopped from denying her variance requests, and (3) Sussex County's alteration of her building permit without informing her until the Board hearing violated her due process rights. Appellant argues the Board erred in considering Braida's testimony as his reasons were aesthetic and that he was not a next-door neighboor. Appellant also lists various reasons why her privacy is important, including concerns of trespass and local sex offenders. Appellant further argues that the process itself imposed both financial and emotional costs.

The Board responded with two arguments: (1) many of Appellants' exhibits are outside the record and should not be considered; and (2) the Board did not err as a matter of law.

**STANDARD OF REVIEW**

This court's review of the Board's decision is limited to "correcting errors of law" and determining "whether substantial evidence exists in the record to support

5

the Board's findings of fact and conclusions of law."[15]  "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.  It is greater than a scintilla and less than a preponderance."[16]  "If substantial evidence supports the Board's conclusions, then this Court must affirm the decision even though it would have reached an opposite conclusion if the issue had come before it in the first instance."[17]

## DISCUSSION

### I.     THE BOARD DID NOT ERR AS A MATTER OF LAW IN CONSIDERING AESTHETIC CONCERNS.

Appellant's first argument is that the Board erred as a matter of law by "prioritiz[ing] aesthetic preferences over [Appellant's] legitimate concerns for privacy and security."[18]  However, the Board is permitted as a matter of law to do so.

"[Z]oning code requirements exist for a number of important reasons, and Delaware law carefully scrutinizes variances from those requirements."[19]  The

---

[15] *Dexter v. New Castle Cty. Bd. of Adjustment*, 1996 WL 658861, at *2 (Del. Super. Sept. 17, 1996), aff'd. 692 A.2d 414 (Table) (Del. 1997).
[16] *Gala v. Bullock*, 250 A.3d 52, 69 (Del. 2021) (citations omitted).
[17] *Dexter v. New Castle Cty. Bd. of Adjustment*, 1996 WL 658861, at *2 (Del. Super. Sept. 17, 1996) (citations omitted).
[18] Opening Br. at Section I.
[19] *Markert v. Bd. of Adjustment of Rehoboth Beach*, 2022 WL 4478388 at *1 (Del. Super. Ct. Sept. 26, 2022).

Sussex County Board of Adjustments' decision-making for variances is governed by 9 *Del. C.* § 6917(3).[20] 9 *Del. C.* § 6917(3) provides that:

> The Board may grant a variance in the application of the provisions of the zoning ordinance or code only if all of the following findings are made:
>
> a. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship or exceptional practical difficulty is due to such conditions, and not to circumstances or conditions generally created by the provisions of the zoning ordinance or code in the neighborhood or district in which the property is located;
>
> b. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance or code and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;
>
> c. That such unnecessary hardship or exceptional practical difficulty has not been created by the appellant;
>
> d. <u>That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located</u>, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

---

[20] *Bd. of Adjustment of Sussex Cty. v. Verleysen*, 36 A.3d 326, 329 (Del. 2012).

e. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.[21]

Appellant argues that the Board improperly denied her 6 foot fence variance application by "prioritiz[ing] aesthetic preferences over [Appellant's] legitimate concerns for privacy and security."[22] However, the Board is guided by 9 *Del. C.* § 6917(3)(d) to find that a variance would "not alter the essential character of the neighborhood" before it can be approved. Thus, the Board was required to consider the aesthetics of the vicinity as evidenced by the testimony of Mr. Braida. The aesthetic concerns are supported by substantial evidence and the Board did not err as a matter of law in finding it dispositive.

Although Appellant's arguments attempt to lessen the weight of Mr. Braida's testimony, the ultimate issue is whether there is substantial evidence relied upon by the Board to support its decision. This Court lacks the ability to reweigh the evidence presented. Thus, Appellant is not entitled to a reversal of the Board decision on the grounds that the Board decision relied upon aesthetic considerations.

---

[21] 9 *Del. C.* § 6917(3) (emphasis added).
[22] Opening Br. at Section I.

## II. APPELLANT IS NOT ENTITLED TO EQUITABLE ESTOPPEL.

Appellant argues that she relied upon the building permit and that the Board should be estopped from denying a variance after Appellant's reliance on that approval. However, equitable estoppel is not applicable to this case.

Equitable estoppel is generally available "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment."[23] Equitable estoppel requires a showing that: (1) the party claiming estoppel lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; and (2) the party relied on the conduct of the party against whom estoppel is claimed; and (3) the party suffered a prejudicial change of position as a result of his reliance.[24]

Traditionally, courts have held that the doctrine of equitable estoppel may not be invoked by the holder of an illegal or invalid building permit, even if there was good faith on the part of the permitholder and financial injury upon revocation of the permit.[25] Generally, courts are extremely cautious in invoking the doctrine of

---

[23] *Ocean City Mart, Inc. v. City of Rehoboth Beach Del.*, 285 A.3d 125, 142 (Del. 2022) (quoting *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 903–04 (Del. 1965)).
[24] *Id.* (citing *Williams Cos., Inc. v. Energy Transfer Equity, L.P.*, 159 A.3d 264, 275 (Del. 2017)).
[25] *Miller v. Bd. of Adjustment of Dewey Beach*, 521 A.2d 642, 646 (Del. Super. 1986) (citations omitted).

9

estoppel in these cases unless there are exceptional circumstances which make it highly inequitable or oppressive to enforce the regulations.[26]

By way of illustration, in *Miller v. Board of Adjustment of the Town of Dewey Beach*, this Court affirmed a denial of certificates of occupancy despite the fact that the permit was issued allowing cottages to be relocated.[27]  Although the *Miller* court found good-faith reliance on the county's mistake and "little or no evidence that the public would be injured if an estoppel were allowed," the court held that the cost of complying with the code "would not be oppressive" and refused to invoke the doctrine.[28]

The doctrine may be employed in exceptional circumstances like *DiSabatino v. New Castle County* where the Court of Chancery found that the county was equitably estopped from reversing its approval of a resubdivision plan.[29]  The *DiSabatino* plaintiffs relied in good faith on the approval to purchase the property and the court noted the "impracticable" difficulties in resolving which family would be entitled to the non-subdivided plot.[30]

Appellant's case does not fit within an exceptional circumstance.  Although Appellant may have relied on a mistake by government officials responsible for

---

[26] *Id.*
[27] *See id.*
[28] *Id.* at 646–47.
[29] *See DiSabatino v. New Castle County*, 781 A.2d 698 (Del. Ch. 2000).
[30] *Id.* at 705.

granting her building permit, nothing else fits. Regarding the lack of knowledge prong, the building permit Appellant attached in her complaint included the blank section for the setback requirements, which should have put her on notice to the code requiring compliance with setback requirements. Although there is a cost to shorten the fence, nothing suggests that cost would be oppressive. To the contrary, the Board seems to have minimized all other costs due to this mistake by ordering the Sussex County Planning and Zoning to refund her variance application fee for the fence. This is not an exceptional circumstance where it would be highly inequitable or oppressive to enforce the regulations. Thus, the Board should not be estopped from denying the Appellant's fence variance.

### III. APPELLANT'S DUE PROCESS RIGHTS WERE NOT VIOLATED.

Appellant raises two due process arguments. First, Appellant argues that the process of receiving a building permit, relying upon it, and not being notified of setback issues until the inspection process imposed undue hardship and additional cost. Second, Appellant argues that she was unfairly treated by not being informed about the edits to the building permit prior to the hearing.

*A. Requiring final inspection approval does not offend due process.*

For procedural due process, the court must use a balancing test to determine what procedures will be required to assure an individual receives due process in a

11

particular context.[31]  The Supreme Court in *Matthews v. Eldridge* set forth the three factors to balance:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requisites would entail.[32]

Here, Appellant's grievance regards not being informed about the erroneous granting of a building permit until the final inspection.  However, that final inspection is a procedural safeguard against building permits being erroneously granted and against construction which fails to comply with either the permit or the zoning code.  Zoning ordinances generally provide control over land use within a neighborhood and are part of a comprehensive plan for community development.[33] Zoning involves rights of the community versus balancing individual property rights with the desires of the community, such as a communal desire for a neighborhood's openness to be preserved instead of being transformed by high fences into an area more reminiscent of a prison compound.  While Appellant may disagree with the Board about how the communal desires should be weighed against her individual

---

[31] *W.L. Gore & Assocs., Inc. v. Wu*, 2006 WL 905346 (Del. Ch. Mar. 30, 2006).

[32] *Id.* (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[33] *Del. Dept. of Nat. Res. & Env't Control v. Sussex County*, 34 A.3d 1087, 1095 (Del. 2011) (citation omitted).

privacy concerns, the process must consider the impact on the rights of the community which zoning ordinances are meant to protect. Thus, the process should not have an unreasonably high risk to erroneously deprive the community rights. The final inspection is a procedural check to ensure compliance with the zoning ordinances.

The alternative which Appellant suggests is that building permits should not be reversed even if the permit was erroneously granted. The process is run by humans, who make human error, and the law should have safeguards against those errors.[34] While Appellant's frustrations with those responsible for the clerical error of granting the building permit which she relied upon are understandable, the clerical error does not mean the process itself violated her rights to procedural due process.

Property interests not worthy of procedural due process protection may be protected by the concept of substantive due process. However, only fundamental property interests are worthy of such protection. Substantive due process applies:

> [I]n the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due-process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached.[35]

---

[34] *See e.g.*, *Miller v. Bd. of Adjustment of Dewey Beach*, 521 A.2d 642, 646 (Del. Super. 1986).
[35] *Dale v. Town of Elsmere*, 702 A.2d 1219, 1224 (Del. 1997).

Without analyzing whether this is a fundamental property issue the decision was not arbitrarily or irrationally reached. The Board provided a detailed explanation as to why the fence variance was granted in part and denied in part, following the guidelines of 9 *Del. C.* § 6917(3) as discussed above.

> B. *Appellant did not suffer prejudice regarding the building permit modification*

Appellant's final claim is that her due process rights were violated by not being informed of the modification to the building permit. While Appellant may have a point that she should have been formally notified about the changes to the building permit prior to the hearing, she was not prejudiced by the lack of notice. Stated in other terms, the Appellant benefitted from the modification.

## CONCLUSION

Appellant has not shown that the Board's decision was legally erroneous or unsupported by substantial evidence. Secondly, the Appellant is not entitled to equitable estoppel relief. Lastly, the Appellant's due process violation claims are unavailing. The Board's decision is **AFFIRMED**.

/s/ *Mark H. Conner*

Mark H. Conner, Judge

xc: Prothonotary

14