Joseph B. DALE and Mary J. Dale,
husband and wife, Plaintiffs
Below, Appellants,

v.

TOWN OF ELSMERE, Charles M. Cava-
naugh, John Jaremchuck, Jr., Hugh D.
Hamill, Edward Dickerson, Phyllis B.
Wingate, Lawerence Sontowski and
Thomas S. Novak, Defendants Below,
Appellees.

No. 115, 1997.

Supreme Court of Delaware.

Submitted: Oct. 15, 1997.
Decided: Nov. 21, 1997.

**1220**

Francis J. Trzuskowski and Francis J. Schanne (argued), Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for Appellants.

Edward M. McNally (argued) and Richard D. Kirk, Morris, James, Hitchens & Williams, Wilmington, for Appellees.

Before WALSH, HARTNETT and BERGER, JJ.

WALSH, Justice:

In this appeal, appellants plaintiffs-below, residents of the Town of Elsmere (the "Town"), seek reversal of the Superior Court's grant of summary judgment in favor of the Town Council, the Mayor, and the Town (collectively, the "Town Defendants") on claims of creation of a nuisance and violation of substantive due process rights under 42 U.S.C. § 1983. On appeal, the appellants claim: (i) the Municipal Tort Claims Act does not govern the nuisance issue; (ii) the creation of an unloading zone violated the applicable zoning regulations; (iii) breach of contract by the Town and the Mayor; and (iv) that they have a constitutionally protected property interest at stake in this litigation. We conclude that the award of summary judgment was appropriate. Accordingly, we affirm.

## I

For the purpose of this appeal, the following facts are undisputed. Joseph B. Dale and Mary J. Dale, his wife, (the "Dales") own two properties on Chestnut Avenue in Elsmere. One property, located on the corner of Kirkwood Highway and Chestnut Avenue, faces Kirkwood Highway, and the other, their residence, is adjacent to the corner property, facing Chestnut Avenue. A delicatessen ("Walt's Deli"), which is the focus of this litigation, is across Chestnut Avenue from the corner property, facing Kirkwood Highway. The Elsmere Fire House is located on Kirkwood Highway to the east of Walt's Deli.

In 1973, the Town adopted the "Town of Elsmere Zoning Ordinance" (the "Zoning Code"). In 1985, the Town adopted Resolution 85–08, which provides:

> WHEREAS, the current vehicular restrictions on Chestnut Avenue where it intersects the Kirkwood Highway are inadequate for protecting the residential character of the neighborhood; and

> WHEREAS, the suppliers of Walt's Delicatessen are able to find an alternative place to load and unload their trucks;

> NOW THEREFORE, BE IT RESOLVED BY THE COUNCIL OF THE TOWN OF ELSMERE, that "NO TRUCKS LOADING OR UNLOADING" signs be placed alongside the "FIFTEEN MINUTE PARKING" signs in accordance with the attached diagram....

Walt's Deli changed owners in 1985. Prior to the change in ownership, delivery trucks did not use Chestnut Avenue, and unloading occurred on Kirkwood Highway or on the Fire House side of Walt's Deli.

In 1992, construction began on the Fire House. Shortly after construction began, the Mayor approached the Dales and requested that they agree, on a temporary basis, to unloading for Walt's Deli on Chestnut Avenue. In exchange, it was promised that the unloading restriction would be strictly enforced thereafter, including the reinstatement of Resolution 85–08. The Dales agreed.[1] On July 14, 1992, Resolution 92–12,

---

1. The Town Defendants disagree that the Mayor requested that the Dales permit a temporary loading and unloading zone, but argue they are entitled to summary judgment despite this issue

titled "Temporary Suspension of Resolution 85–08 Prohibiting Parking and Unloading on Chestnut Avenue," was adopted without opposition from the Dales. It provides:

> WHEREAS, the Mayor and Council of the Town of Elsmere has [sic] determined that Resolution 85–08 by prohibiting parking and unloading on Chestnut Avenue creates a safety hazard; and
>
> WHEREAS, due to the construction of the new fire house there is limited parking on Kirkwood Highway in front of Walt's Delicatessen;
>
> NOW, THEREFORE BE IT HEREBY RESOLVED, by the Mayor and Council of the Town of Elsmere, that Resolution 85–08 be suspended, hereby allowing parking and truck loading and unloading on the East side of Chestnut Avenue during the hours of 8:00 a.m. to 4:00 p.m. until April 1, 1993, or until construction is completed by the Elsmere Fire Company....

On October 14, 1993, the Town adopted another resolution, over the Dales' objection, which created a permanent loading and unloading zone for Walt's Deli on Chestnut Avenue. This resolution, No. 93–5, permitted loading and unloading in a forty foot zone "on the east side of Chestnut Avenue ... with parking limited to thirty (30) minutes, during the hours of 8:00 a.m. to 3:00 p.m., Monday through Friday...." The Dales complain that neither the time parameters nor the forty foot restriction have been enforced. As a result, trucks park in front of the Dales' lawn and driveway at various hours and with considerable noise.

The Dales brought suit against Walt's Deli, the truck operators who deliver on Chestnut Avenue, and the Town Defendants. The allegations of their complaint pertinent to this appeal are: (i) the Town and the Mayor created and maintained a private and a public nuisance, and the Mayor, as agent for the Town, made negligent or intentional misrepresentations ("Count I"); (ii) the Town and the Mayor violated the Zoning Code ("Count III"); (iii) the Town and the Mayor, both personally and as agent for the Town, breached a contract with the Dales concerning the reinstatement of a no loading zone ("Count IV"); and (iv) the Town Defendants violated the Dales' substantive due process rights under the 14th Amendment and 42 U.S.C. § 1983 ("Count V").

The Town Defendants moved for, and were granted, summary judgment on all of the above listed Counts.[2] As to the Count I claims, the Superior Court found that the Town Defendants were protected from liability by the Municipal Tort Claims Act, 10 *Del.C.* Ch. 40, (the "Act"). On the Count III claims, the Superior Court found that the Town has full authority to make decisions about parking zones and that review by the Board of Adjustment was unnecessary because of Walt's Deli's prior non-conforming use. The Superior Court ruled that the agreement alleged in Count IV was not legally enforceable for lack of consideration and that, in any event, the Mayor lacked the authority to enter into it. Finally, with respect to the substantive due process violation alleged in Count V, the Superior Court held that the Dales did not have a constitutionally protected right to be free from proximity to a loading zone.

## II

This Court reviews the grant of summary judgment, *de novo*, to determine whether, viewing the facts in the light most favorable to the Dales, the Town Defendants have demonstrated that there are no material issues of fact in dispute and that they are entitled to judgment as a matter of law. *See Burkhart v. Davies*, Del.Supr., 602 A.2d 56, 59 (1991), *cert. denied*, 504 U.S. 912, 112 S.Ct. 1946, 118 L.Ed.2d 551 (1992).

### A.

The Dales argue that the Superior Court committed reversible error by granting summary judgment to the Town and the Mayor

---

of fact. For the purpose of this analysis, it is assumed that this agreement does in fact exist.

**2.** Two additional motions for summary judgment are not at issue in this appeal: (i) the grant of summary judgment in favor of the truck operators because they could not be considered to have created the nuisance; and (ii) the denial Walt's Deli's motion for summary judgment.

on the Count I claims of nuisance and misrepresentation.[3] They assert that the Superior Court misapplied the Act in reaching the conclusion that the Town and the Mayor were immune from liability on the nuisance claim. Specifically, the Dales argue that the Superior Court incorrectly determined that the loading zone is neither prohibited by statute nor poses a threat to public health or welfare and that they could be made whole by injunctive relief, rather than by damages. Further, they argue that material issues of fact concerning the existence of a nuisance have been established.

Alternatively, the Dales argue that, even if the Act bars their nuisance action, the Superior Court erred by granting summary judgment in favor of the Mayor on the misrepresentation claim because their claims against the Mayor fall under the "property damage exception" of the Act. 10 *Del.C.* § 4011(c).[4] They assert that the Superior Court improperly interpreted this exception to require that they allege *physical* property damage, rather than intangible property damage.

The Town and the Mayor respond that, because the Dales' Count I claims sound in tort and seek recovery of damages, they are immune under § 4011(a) of the Act.[5] The question of their liability, it is argued, turns on whether their actions are discretionary in nature. They assert that this issue must be decided in their favor because the change in parking along Chestnut Avenue is "the allocation of scarce resources among competing policy objectives [which] is, under ordinary circumstances, precisely the sort of 'discretionary' act which the legislature intended to

immunize, as evidenced by the language of Sec. 4011(b)(3)." (Ans. Br. of Appellees at 8 (quoting *In re Consolidated Flood Cases,* Del.Super., C.A. No. 91C–09–235, 1993 WL 393044, at *8, Goldstein, J. (Sept. 7, 1993) (*"Consolidated Flood Cases"*)).) Finally, they argue that the Mayor's actions do fall within the exception of § 4011(c) because such section requires *physical* property damage and, thus, the Dales' claims for lost enjoyment and lost value are insufficient to survive summary judgment.

■ In our view, the Superior Court correctly granted summary judgment in favor of the Town and the Mayor on Count I. The Superior Court correctly distinguished this case from *Consolidated Flood Cases.* The Dales' claims of misrepresentation and nuisance are "tort claims seeking recovery of damages" and, as such, are governed by the Act. 10 *Del.C.* § 4011(a). The Dales' interpretation of *Consolidated Flood Cases,* as creating liability for any governmental action that impacts the public as arguably a public nuisance, is inconsistent with the plain language of § 4011(b)(3).[6] The creation of the loading zone was a discretionary act for which neither the Town nor the Mayor may be held liable. 10 *Del.C.* § 4011(b)(3).

■ As to § 4011(c) and the Mayor's personal liability, exceptions to broad grants of immunity are to be construed narrowly. *Heaney v. New Castle Co.,* Del.Supr., 672 A.2d 11, 14 (1995). The Dales have not cited any authority that supports their asserted position. Their reliance upon *Dilucehio v. Shaw,* Del.Super., 115 A. 771 (1922), is misplaced. In *Dilucehio,* the Superior Court

---

**3.** The Dales do not argue that § 4011(a) of the Act is inapplicable to their tort claim of misrepresentation against the Town. Therefore, summary judgment for the Town on the misrepresentation claim is not challenged.

**4.** 10 *Del.C.* § 4011(c) states:

An employee may be personally liable for acts or omissions causing property damage, ... in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

**5.** 10 *Del.C.* § 4011(a) states: "Except as otherwise expressly governed by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages...."

**6.** 10 *Del C.* § 4011(b) states:
Notwithstanding § 4012 of this title, a governmental entity shall not be liable for any damage claim which results from: ...
(3) The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under which the discretionary function or duty is performed is valid or invalid....

simply held that, because negligence is not an element of a private nuisance claim, a plaintiff, to survive a demurrer, did not have to allege the defendant's duty or manner of wrongful use of vibration causing machinery. *Id.* at 771. We adopt the holding of *Carr v. Town of Dewey Beach,* that economic harm alone does not constitute "property damage" as that term is used in the Act. D.Del., 730 F.Supp. 591, 602 (1990). Because the Dales seek monetary compensation only for lost enjoyment and value, they have failed to allege any "property damage" sufficient to implicate the exception of § 4011(c). Accordingly, the Superior Court's ruling is affirmed.

**B.**

■ The Dales view the creation of the loading and unloading zone on Chestnut Avenue as a zoning change that required the approval of the Board of Adjustment because parking regulation is covered by the Zoning Code. In support of this argument, the Dales cite Zoning Code § 304E.1., which provides that "[t]ruck loading and unloading facilities shall be provided on the property in other than the front yard area in sufficient amount to permit the transfer of goods in other than a public street."

The Town responds that it has full authority to make decisions about parking zones and that the approval of the Board of Adjustment is not necessary. *Leon N. Weiner & Assocs. v. Carroll,* Del.Ch., 270 A.2d 539, 541 (1970), *rev'd on other grounds,* Del.Supr., 276 A.2d 732 (1971). Alternatively, it argues that approval of the Board of Adjustment was unnecessary because a prior nonconforming use obviated the need for a variance. Such use arose, they maintain, when Walt's Deli unloaded trucks on Kirkwood Highway, a public street, prior to the enactment of the Zoning Code.

The Superior Court did not err by granting summary judgment in favor of the Town Defendants on this Count. Section 401 of the Elsmere Home Rule Charter specifically empowers the Town Council "to regulate the streets, lanes and alleys of the Town and to have and exercise control of the same; ... to adopt municipal zoning regulations; to adopt traffic regulations...." Nowhere in either that charter or in the Zoning Code is the right to make traffic regulations vested solely in the Board of Adjustment. If such were the case, Resolution 85–03, which the Dales argue the Mayor promised would be reinstated, would be invalid. As a prior nonconforming use, Walt's Deli is exempted from § 304E.1. of the Zoning Code by § 203N.2., which provides that "[n]one of the off-street parking facilities required in this Ordinance shall be required for any existing building or use...."

Nor is the Dales' spot zoning claim viable. *Shevock v. Orchard Homeowners Ass'n, Inc.,* Del.Supr., 621 A.2d 346 (1993), upon which the Dales rely, addresses claims arising only where the procedural aspects of zoning have not been followed. As demonstrated above, the Town Council did not violate any zoning procedure in adopting Resolution 93–5. Therefore, the Superior Court's grant of summary judgment is affirmed.

**C.**

■ The Dales claim that the Town and the Mayor, personally and as agent for the Town, breached an agreement calling for reinstatement of the no loading zone. The Dales argue that this agreement is legally enforceable because they gave valid consideration in the form of a promise not to bring legal action on "colorable claims." This claim is quickly addressed.

The agreement was not reached in a contractual setting. If every promise an elected official made to his constituency was enforceable through an action at law, our courts would be inundated with claims of breach of contract. Moreover, there has been no showing that the Mayor possessed the authority to enter into such an agreement. *Cf. Hartman v. Buckson,* Del.Ch., 467 A.2d 694 (1983). Accordingly, the award of summary judgment in favor of the Town and the Mayor on Count IV is affirmed.

**D.**

■ The Dales' final claim against the Town requires that we address an issue of first impression: whether the creation of a "private nuisance" by a governmental entity

may give rise to a substantive due process claim under 42 U.S.C. § 1983.[7] The Dales claim that the establishment of the loading zone created a nuisance that violates their substantive due process rights in the use and enjoyment of their property. They argue that the Superior Court erred by distinguishing the case *sub judice* from *DeBlasio v. Zoning Board of Adjustment*, 3d Cir., 53 F.3d 592, *cert. denied*, —— U.S. ——, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995), and by interpreting their allegations to assert an interest in parking or traffic regulations, rather than an interest in the enjoyment of their home. They further argue that they must establish only arbitrary denial of their request for a no loading zone and not a distinct entitlement to a no loading zone under the Zoning Code.[8] *See id.* at 601 n. 11. Alternatively, they argue that, even if they are required to show a distinct entitlement, they did so because this case involves a variance, and they were denied the right to have that variance reviewed by the Board of Adjustment.[9]

The Town Defendants respond that the Dales have failed to establish an interest worthy of substantive due process protection. They argue that *DeBlasio* is distinguishable because the plaintiff in *DeBlasio*, unlike the Dales, owned the property that was the subject of the allegedly violative government action. The Town Defendants argue that this case is analogous to *MacNamara v. County Council of Sussex County*, in which the District Court for the District of Delaware held that plaintiffs who owned property near land that was granted a conditional use, but who did not actually own that land, failed to establish a protectable property interest. D.Del., 738 F.Supp. 134, 141, *aff'd*, 3d Cir., 922 F.2d 832 (1990).

■ The Superior Court did not err by granting summary judgment in favor of the Town on the § 1983 claim. Initially, we note that the Municipal Tort Claims Act does not shield the Town Defendants from liability for claims brought under § 1983. *Martinez v. California*, 444 U.S. 277, 284 & n. 8, 100 S.Ct. 553, 558 & n. 8, 62 L.Ed.2d 481 (1980). As a predicate to a substantive due process claim, a plaintiff must first establish possession of property interest "worthy of due process protection." *DeBlasio*, 53 F.3d at 598. "[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process": only fundamental property interests are worthy of such protection. *Id.* at 598–99. Ownership of property has been held to be such an interest. *Id.* at 600 (citing *Bello v. Walker*, 3d Cir., 840 F.2d 1124 (1988)). Thus,

in the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due-process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached. Where the plaintiff so alleges, the plaintiff has, as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection.

*Id.* at 601 (footnotes omitted).

■ If it be assumed, for summary judgment purposes, that the decision implementing the loading zone was arbitrarily or irrationally reached, the question arises whether the Dales are the type of "land-owning plaintiff" protected from governmental interference by the *DeBlasio* holding. We conclude that they are not. We read *DeBlasio*, consistent with *MacNamara*, to hold that a "land-owning plaintiff" is limited to one who is an

**7.** Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law,

suit in equity, or other proper proceeding for redress. . . .

**8.** The record does not reflect that the Dales ever requested a no loading zone, although they objected to Resolution 93–5, which made the loading zone permanent.

**9.** The Board of Adjustment is empowered to review variances. Zoning Code § 702.A.1.

actual property owner. Indeed, this appears to have been the interpretation of *DeBlasio* intended by the Third Circuit.[10] Therefore, we find that the Dales' adjacent property ownership is insufficient to establish a property interest worthy of substantive due process protection upon which such a claim must be predicated. The Town Defendants were entitled to judgment as a matter of law of the Dales' § 1983 claim, and the award of summary judgment is affirmed.

## III

There are no material issues of fact in dispute, and the Town Defendants have demonstrated that they are entitled to judgment as a matter of law on each of the Counts. Therefore, the Superior Court's award of summary judgment in favor of the Town Defendants is **AFFIRMED.**

**10.** *See id.* at 601 n. 10 ("Having implied in *Neiderhiser [v. Borough of Berwick,* 3d Cir., 840 F.2d 213 (1988)] that a lessor possesses a property interest worthy of substantive due process protection against arbitrary and irrational governmental deprivation, *an actual property owner, a fortiori,* possesses such an interest." (emphasis supplied)).