J.N.K., LLC and Tony Ashburn & Son, Inc., Petitioners,

v.

The KENT COUNTY LEVY COURT, P. Brooks Banta, Allan F. Angel, Harold K. Brode, Eric L. Buckson, Bradley S. Eaby, W.G. Edmanson, and Richard E. Ennis, Respondents.

C.A. No. 3662–VCS.

Court of Chancery of Delaware.

Submitted: May 14, 2009.

Decided: July 15, 2009.

**22.** *Giuricich v. Emtrol Corp.,* 449 A.2d 232, 238 (Del.1982).

John W. Paradee, Esquire, D. Benjamin Snyder, Esquire, Kevin M. Baird, Esquire, Glenn C. Mandalas, Esquire, Prickett, Jones & Elliott, P.A., Dover, DE, for Petitioners.

Joseph Scott Shannon, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, DE, for Respondents.

## OPINION

STRINE, Vice Chancellor.

### I. *Introduction*

In this action, two companies that own land in Kent County—J.N.K., LLC and Tony Ashburn & Son, Inc. (collectively "Ashburn")—are suing the Kent County Levy Court and its members (collectively "the Levy Court") in order to invalidate two ordinances that the Levy Court passed in 2008 (the "Challenged Ordinances"). Specifically, Ashburn argues that Kent County did not adequately inform its residents of the Ordinances.

Critical to answering this question are the three general ways in which a county can inform residents of changes to the county's zoning code: (1) publishing notice

in a newspaper of general circulation ("Published Notice"); (2) mailing individualized notice to those most likely to be affected by changes, typically the owners of the affected property or owners of adjacent properties ("Individual Notice"); and (3) posting notice on each affected property ("Posted Notice"). When Kent County enacted the Challenged Ordinances it only provided Published Notice, which Ashburn claims was insufficient because: (1) under Ashburn's reading of 9 *Del. C.* § 4926, Kent County had to provide Individual Notice to every property owner affected by the Ordinances; and (2) under Ashburn's reading of Kent County Code § 205–410, Kent County had to send Individual Notice to the owners of properties adjacent to the affected properties and provide Posted Notice. The Levy Court responds that, because the Challenged Ordinances were widely applicable changes to the uses available within existing zoning classifications, as opposed to changes to the zoning classifications of specific properties, Kent County only had to give Published Notice, which Kent County did. Both sides have moved for summary judgment on these issues.

In this opinion, I conclude that the Levy Court's interpretation is correct and that Kent County only had to publish notice of the Challenged Ordinances because those Ordinances only implement generally applicable changes (i.e., altering how all properties within a given zoning classification can be used) as opposed to property-specific zoning changes (i.e., changing the zoning classification of particular properties). First, with regard to 9 Del. C. § 4926, both parties agree that Kent County only has to provide Individual No-

tice to affected property owners in the event of a "proposed zoning change," the statutorily relevant term.[1] Ashburn argues that the Challenged Ordinances were such a proposed zoning change because they change how land owners can use their properties. But, I find that a zoning change within the meaning of § 4926 only occurs where a county changes the zoning classification or district of a property, or engages in a functionally similar exercise such as placing certain properties in a new overlay zone that has the same practical effect as a rezoning (for the sake of brevity, a "Classification Change"). That did not happen here. Rather, Kent County only changed the permitted uses of all properties within pre-existing zoning districts (for the sake of brevity, a "Generally Applicable Change"). Accordingly, I find that Kent County did not need to give Individual Notice to affected property owners under § 4926.

I also find that Kent County complied with the Kent County Code's notice requirements. Although that Code is arguably ambiguous, Kent County has consistently and reasonably interpreted it as only requiring that Kent County provide Posted Notice or Individual Notice in the case of Classification Changes. I defer to that interpretation and find that, because the Ordinances at issue only make Generally Applicable Changes, the County only had to provide Published Notice.

## II. *Background*

### A. *The Challenged Ordinances*

On February 17, 2008, Kent County published notice of LC07–35 and LC08–04[2] —the two Challenged Ordinances. These

---

1. 9 Del. C. § 4926.

2. Kent County uses separate designations for proposed and enacted ordinances with the prefix "LC" used to denote proposed ordi-

nances. For simplicity's sake, I have followed the parties' briefing and used the Challenged Ordinances' proposed designations.

Ordinances contain tightened density and wastewater restrictions aimed at limiting the amount of development in Kent County.

Both Challenged Ordinances focus in substantial part on the wastewater systems that can be used in residential subdivisions. Before the Ordinances were adopted, a developer planning to create a residential subdivision could use public sewers (where available), parcel-specific septic tanks, or community wastewater systems.[3] But, sewers are generally only available in Kent County's "Growth Zone"[4] and so, as a practical matter, many owners had to choose between using community wastewater or parcel-specific septic systems. Importantly, Ashburn argues, and Kent County has not disputed, that from the point of view of a developer seeking to subdivide and develop its property for maximum profit, parcel-specific septic systems are less desirable because such systems trigger more stringent minimum lot size requirements.[5] Those requirements limit density of use in the sense that a builder can site fewer homes per acre using parcel-specific septic systems than if the builder employed a community wastewater system to serve the entire subdivision. Depending on the size of a subdivision, those minimum lot size requirements can be as high as four acres per unit.[6] Accordingly, developers aiming to create the densest possible development generally preferred community wastewater systems or public sewers.

The Challenged Ordinances, however, prohibit subdivisions from using community wastewater systems,[7] effectively requiring any subdivision not served by public sewers to use parcel-specific septic systems. Accordingly, under the Ordinances, unless its property is served by public sewers, a developer must use parcel-specific septic systems and comply with the minimum lot size requirements for such wastewater systems. In addition, LC07–35 entirely prohibits parcel-specific septic for all but the smallest subdivisions in the Growth Zone, forcing developers to use

---

3. *See* Respondents' Ans. Br. Ex. B–1 (herein "LC07–35") at 2–3.

4. The Growth Zone is an overlay district that the Levy Court created in 2003. As described in the Kent County Code, the Growth Zone is an area "where infrastructure such as water, sewer, and transportation facilities exists or is planned to serve development." Kent County Code § 205–397.2(A)(2). The idea is to make development in the Growth Zone more attractive and thereby encourage development in this narrow area that already has the facilities to accommodate more intensive use rather than the exploitation of undeveloped land. *See* Kent County Code § 205–397.2(A)(1) ("The Growth Zone Overlay District encompasses an area that Kent County has determined new development should be encouraged. To that end, incentives such as area and bulk requirement reductions are provided to encourage development within the zone rather than in the more rural areas of the County.").

5. Petitioners' Op. Br. at 7–8.

6. *See* Kent County Code § 187–53(D)(7). The Kent County Code varies the minimum lot size requirement based upon how many lots are being created in a subdivision. The four acre minimum only applies to subdivisions with more than fifty lots. By contrast, subdivisions with ten or fewer lots can create lots of one acre. Intermediately sized subdivisions of eleven to twenty-five and twenty-six to fifty lots can create lots as small as two and three acres, respectively. *Id.*

7. Specifically, LC07–35 eliminates the choice of community wastewater systems in all subdivisions and LC08–04 implements this general change by eliminating the use of community wastewater systems in Agricultural Conservation, Agricultural Residential, and Single-Family Residential districts. *See* LC07–35 at 2–3; Respondents' Ans. Br. Ex. B–2 (herein "LC08–04") at 7.

public sewers in that area.[8]

LC07–35 also modifies the way in which a developer can achieve the minimum lot size requirements. Under the old version of the County Code, each lot did not have to meet the County's minimum lot size thresholds; the developer could create lots up to 25% smaller than the applicable minimum size as long as the subdivision's average lot size met the County's requirements.[9] By contrast, the minimum lot size requirements under LC07–35 are strict limits that apply to each lot individually.[10]

Finally, in a change that does not implicate wastewater management, LC08–04 removes a developer's option of using its property for "Village Development," a formerly permitted use that allowed greater development. Under the Kent County Code, development in Agricultural Conservation and Agricultural Residential districts is generally limited to a maximum of one unit per ten acres.[11] Village Development, however, had allowed up to one unit per acre, a much denser level of development.[12]

The bottom line is that the Challenged Ordinances change Kent County's pre-existing density and wastewater regulations in a way that generally requires developers to engage in less intensive development. There is no dispute that these restrictions alter how owners can use their properties. LC07–35 and LC08–04 do not, however, make Classification Changes like altering the boundaries of any zoning district by moving certain properties into new zoning classifications. Rather, the Challenged Ordinances only make Generally Applicable Changes that affect the way property owners can utilize already zoned classes of property. All Agricultural Residential properties in Kent County, for example, remain Agricultural Residential properties under the Challenged Ordinances, but now the potential for development in all Agricultural Residential properties has decreased.

### B. *Kent County Enacts The Challenged Ordinances*

The parties agree that Kent County published notice of the Challenged Ordinances in *The Delaware State News* on February 17, 2008.[13] And, after publishing that notice, Kent County proceeded to hold hearings on those Ordinances. On March 6, the Regional Planning Commission held a public hearing on the Challenged Ordinances. A week later, that Commission voted, splitting 3–3 on the Challenged Ordinances and therefore that Commission forwarded the Ordinances to the Levy Court without a recommendation. On March 25, the Levy Court held its own public hearing and passed the Challenged Ordinances.

### III. *Analysis*

In response to the Levy Court's enactment of the Challenged Ordinances, Ashburn brought this action. In its Amended Petition for Injunctive Relief, Declaratory Judgment, and Other Relief, Ashburn argues that the Challenged Ordinances are invalid for over a dozen separate reasons. Ashburn now seeks to win its case short of trial by moving for summary judgment on two related issues that concern whether or not Kent County provided affected land-

---

8. *See* LC07–35 at 2–3.

9. *Id.* at 3.

10. *Id.*

11. Kent County Code §§ 205–49; 205–65.

12. LC08–04 at 2, 4.

13. *See* Petitioners' Op. Br. Ex. 1.

owners with sufficient notice of the Challenged Ordinances.

First, Ashburn argues that the Challenged Ordinances fall within the scope of 9 *Del. C.* § 4926, which requires Individual Notice to the owners of affected properties and properties adjacent to affected properties in the case of "any proposed zoning change." According to Ashburn, the phrase "proposed zoning change" is a broad one that is triggered not only by Classification Changes, but also by Generally Applicable Changes like those at issue here.

Alternatively, Ashburn urges that the Challenged Ordinances' enactment did not comply with Kent County Code § 205–410, which Ashburn reads as mandating Individual Notice to owners of properties adjacent to affected properties and Posted Notice on every affected property whenever there is any change to Kent County's zoning code, including Generally Applicable Changes.

The Levy Court has responded with a cross-motion for summary judgment asking this court to find that Kent County did not have to provide Individual or Posted Notice of the Challenged Ordinances.

### A. *Legal Standard*

Under Rule 56(h), in a case like this one, where the parties have filed cross-motions for summary judgment and neither party has argued that there is a material issue of fact, "the Court shall deem the motion to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motion." [14] At this stage of the proceedings, there is no factual dispute as to what happened. Both parties agree on the substance of the Challenged Ordinances and that Kent County only provided Published Notice of the Ordinances. Rather, this case turns on which reading of the applicable notice statutes and ordinances is correct.

### B. *9 Del. C. § 4926*

█ Ashburn's main argument is that Kent County violated 9 Del. C. § 4926, which requires Individual Notice in the event of a "proposed zoning change." According to Ashburn, because the Challenged Ordinances change the permissible uses of properties, those Ordinances constitute a zoning change within the meaning of § 4926, and therefore Individual Notice was necessary. By contrast, Kent County says that the heightened Individual Notice requirement in § 4926 only applies to Classification Changes (e.g., changing a property's zoning designation from Agricultural Conservation to Agricultural Residential) as opposed to Generally Applicable Changes (e.g., lowering the permitted density in all Agricultural Conservation properties). I now explain why I believe Kent County has the better argument.

Interpreting 9 Del C. § 4926 begins with understanding the Delaware Code's general notice framework for zoning-related actions. In the chapters of the Code dealing with Delaware's counties, the General Assembly requires two types of notice depending on the nature of the proposed change. First, virtually any zoning-related change, including both Classification and Generally Applicable Changes, requires Published Notice. In the case of Kent County, this is required by 9 *Del. C.* § 4911, which gives the Levy Court the power to make "amendments, supplements, changes or modifications (herein

---

14. Ct. Ch. R. 56(h); *see also Am. Legacy Found. v. Lorillard Tobacco Co.,* 886 A.2d 1, 18 (Del.Ch.2005) ("[U]nder Court of Chancery Rule 56(h), since neither party argues that there is a disputed material issue of fact, the court deems the cross-motions to be the equivalent of a stipulation for decision on the merits on the record submitted.").

called changes) with respect to the number, shape, boundary or area of any district or districts, *or any regulation of, or within, such district or districts, or any other provision of any zoning regulation or regulations.*"[15] Section 4911(b) requires that the County provide Published Notice before making any of these broadly defined changes.[16]

In addition to this general requirement of Published Notice for any zoning-related change, the Delaware Code also requires that each county provide Individual Notice to the owners of affected properties and properties adjacent to affected properties in the case of a "proposed zoning change." For Kent County, this requirement is found at 9 Del. C. § 4926 which provides that:

> With respect to any proposed zoning change, *unless the owner applies for the change* or consents to the change, the county government shall notify *the owner of the property and all adjacent property owners* to the extent and in the manner the county by ordinance so provides as of June 28, 2000, mailed at least

7 days prior to the initial hearing upon such zoning change.[17]

Nearly identical provisions appear in the chapters that govern zoning in New Castle and Sussex counties.[18]

 The question before the court is whether the phrase "proposed zoning change" in § 4926 should be read broadly to encompass Generally Applicable Changes or, more narrowly, as only including Classification Changes. In resolving this dispute, I must make an independent determination of what the Delaware Code requires. Because Kent County's power over zoning stems from the General Assembly's delegation, Kent County and its Levy Court can only exercise their authority over zoning consistent with state law.[19] And, under Delaware law, while an agency's or county's interpretation of a statute that it administers is entitled to some weight, "[s]tatutory interpretation is ultimately the responsibility of the courts," and courts will not defer to [an agency's or county's] interpretation as correct merely because it is rational or not clearly erroneous.[20] In cases where the meaning of a

15. 9 *Del. C.* § 4911(a) (emphasis added).

16. *9 Del. C.* § 4911(b). *9 Del. C.* § 2607 and 9 *Del. C.* § 6911 provide substantively identical grants of authority over zoning along with effectively similar Published Notice requirements for New Castle and Sussex Counties (in the case of Sussex County the notice requirement is incorporated through reference to another part of the Delaware Code).

17. 9 Del. C. § 4926 (emphasis added).

18. The provisions for New Castle and Sussex counties are at 9 *Del. C.* § 2615 and 9 *Del. C.* § 6926 (unlike the other two provisions, § 6926 refers to "all property owners" instead of "all adjacent property owners").

19. *New Castle County Council v. BC Dev. Assocs.,* 567 A.2d 1271, 1275 (Del.1989) ("[I]t is axiomatic that delegated power may be exercised only in accordance with the terms of its delegation."); *Farmers for Fairness v. Kent County,* 940 A.2d 947, 956 n. 43 (Del.Ch. 2008) ("[W]hen one legislative body having superior authority—such as the General Assembly—has required that another legislative body—such as the Kent County Levy Court—follow certain procedures, the court must do its duty and enforce the requirements imposed on the latter's lawmaking authority.").

20. *Pub. Water Supply Co. v. DiPasquale,* 735 A.2d 378, 382–83 (Del.1999); *see also New Castle County Dep't of Land Use v. Univ. of Del.,* 842 A.2d 1201, 1211 (Del.2004) (holding that the New Castle County Board of Assessment Review's interpretation of the Delaware Code was not entitled to deference); *BC Dev. Assocs.,* 567 A.2d at 1275 (holding that when even when a county's governing body acts in a legislative capacity, that body's authority is "analogous to that of an administrative agency").

statute is unambiguous, the court applies the plain meaning of the statute.[21] But, "[i]f a statute is ambiguous, it should be construed in a way that will promote its apparent purpose and harmonize with other statutes."[22] Ascertaining the Delaware Code's meaning requires evaluating the legislative scheme as a whole instead of as individual parts.[23]

Here, the phrase "zoning change" is not explicitly defined by the Delaware Code, and Ashburn's reading is a plausible interpretation when that phrase is considered in isolation. But, the better reading of § 4926 is that it only applies to Classification Changes.

For starters, § 4926 appears to be designed around small-scale land use changes. In addition to referring to applications by the owner of the property and requiring notice to that specific owner if she did not initiate the change, the Code requires notice to "all adjacent property owners," a requirement that only makes sense when the changes are quite property specific.

Similarly, reading § 4926 as only covering Classification Changes best comports with the rest of the Delaware Code. As has been discussed, § 4926 is not the only provision of the Delaware Code addressing notice. 9 Del. C. § 4911 requires that Kent County publish notice of virtually any change in its zoning regulations, expressly addressing the kind of generally applicable regulatory shifts that the Challenged Ordinances caused.[24] And, in so doing, § 4911 clearly uses broader language than § 4926 does, explicitly covering Generally Applicable Changes. Had the General Assembly intended to make § 4926 as broad as § 4911, one would have expected it to use the same language. Or, it could have just added an Individual Notice requirement to the Published Notice requirement in § 4911(b). But, the General Assembly did not do either, suggesting that the General Assembly saw § 4926 as addressing a narrower set of circumstances than § 4911 does.[25]

Furthermore, in using the phrase "zoning change," the General Assembly was

**21.** *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932–33 (Del.2007).

**22.** *Eliason v. Englehart*, 733 A.2d 944, 946 (Del.1999).

**23.** *Daniels v. State*, 538 A.2d 1104, 1110 (Del. 1988) ("[E]ach part of the statute must be read in context to produce a harmonious whole."); *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1245 (Del. 1985) ("A statute is passed by the General Assembly as a whole and not in parts or sections. Consequently, each part or section should be read in light of every other part or section to produce an harmonious whole.").

**24.** 9 Del. C. § 4911 (expressly requiring Published Notice of amendments to "any regulation of, or within, such district or districts and any other provision of any zoning regulation or regulations").

**25.** In response to this argument, Ashburn changed its tack somewhat during oral argu-

ment, asserting instead that § 4926 does not apply to all changes in zoning regulations, but instead only to changes of a certain to-be-judicially-defined magnitude, of which Ashburn argues that a reduction in permitted density is one. That reading, however, is not supported by any text within § 4926. If one accepts that the reference to zoning changes includes not only Classification Changes but also Generally Applicable Changes in zoning regulation, then there is no sensible reason for reading § 4926 as only applying to certain changes in how an owner may use her land. Rather, § 4926 explicitly states that it refers to *"any* proposed zoning change." 9 Del. C. § 4926 (emphasis added). It would also make little policy sense to read 4926 as creating some type of amorphous standard for when Individual Notice is required. A materiality threshold would create unpredictable litigation over which ordinances are substantial enough to trigger § 4926.

relying on a phrase that is familiar in this state. As the Levy Court points out, over forty-five years of Delaware Supreme Court cases have used "zoning change" as a way of referring to Classification Changes.[26] And, in a section entitled "Changes in zoning," the Delaware Code deals exclusively with rezonings, suggesting that the linguistically identical zoning changes only refers to rezonings or similar Classification Changes that treat properties that were previously identically zoned differently.[27]

Finally, the Levy Court's interpretation has the virtue of making policy sense as it sensibly balances the value of providing Individual Notice to property owners with the burden of providing such Notice. In the case of Classification Changes, which typically have a very specific effect, it is far less likely that Published Notice alone would give those who are affected actual notice of the proposed changes or otherwise ensure that their viewpoint will be adequately represented in the political process. For this reason, it is logical to provide affected property owners in such situations with Individual Notice so that they will know of the proposed changes and can present their views to the Levy Court. In the case of Generally Applicable Changes, however, such notice would be expensive and would not be as necessary. Where changes are widespread, community groups and associations representing developers can be more reliably counted on to bring up competing arguments and dis-

seminate information about the proposed changes. Where proposed regulatory changes will have a widespread impact, the press is also more likely to take an interest and inform the general public. Indeed, the existence of this case shows that Published Notice will often provide notice to those who are acutely interested in zoning matters. Although Ashburn asserted at oral argument that most property owners probably do not know of the Challenged Ordinances, Ashburn, which has a special interest in such matters, knew of those Ordinances before their adoption by the Levy Court, and the Levy Court record reflects a widespread public interest and awareness of the Challenged Ordinances.[28]

In contrast to the prior usage and policy logic that supports reading the term zoning changes in the way the Levy Court suggests, Ashburn has not pointed to a single instance in which the term "zoning change" was used by a Delaware court to refer to Generally Applicable Changes. It also has not provided a convincing explanation of how its interpretation comports with the fact that § 4926 is clearly aimed at small-scale changes like rezonings and, based upon the logic of the Delaware Code, applies to a smaller set of changes than § 4911 does.

Rather, Ashburn claims that reading § 4926 as only addressing Classification Changes would contradict this court's holding in *Farmers for Fairness v. Kent County*.[29] But, in that case there were

---

26. *See, e.g., Dale v. Town of Elsmere*, 702 A.2d 1219, 1223 (Del.1997) (referring to the creation of loading and unloading zone for a specific property as a zoning change); *Tate v. Miles*, 503 A.2d 187, 191 (Del.1986) (referring to the rezoning of two lots as a zoning change); *Carl M. Freeman Assocs., Inc. v. Green*, 447 A.2d 1179, 1179 (Del.1982) (referring to the rezoning of one property as a zoning change); *Willdel Realty, Inc. v. New Castle County*, 281 A.2d 612, 614 (Del.1971)

(same); *Daniel D. Rappa, Inc. v. Engelhardt*, 256 A.2d 744, 745 (Del.1969) (same); *McQuail v. Shell Oil. Co.*, 183 A.2d 572, 580 (Del.1962) (same).

27. 9 *Del. C.* § 4925.

28. Petitioners' Op. Br. Ex. 5 at 83–97.

29. 2007 WL 1651931 (Del.Ch. May 25, 2007), *aff'd*, 940 A.2d 945 (Del.2007).

Classification Changes. Specifically, the ordinance at issue created a "Coastal Protection Overlay District." Properties that found themselves within the new Overlay District were subjected to different regulations than ones that were not. By treating identically zoned properties differently, Kent County was, in essence, creating new zoning classifications for the properties within the Coastal Overlay District. As a result, this court found that these were "new districts" for zoning purposes, and adopting the Overlay was therefore a zoning change necessitating § 4926 notice.[30] In this instance, however, no new districts were created. The only changes were Generally Applicable ones.

Alternatively, Ashburn argues that, in adopting § 4926, the General Assembly was applying the definition of "zoning" found in § 205–6 of the Kent County Code, which defines zoning as "[t]he reservation of certain specified areas within a community, County or city for building and structures, or use of land, for certain purposes with other limitations such as height, lot coverage and other stipulated requirements."[31] But, the § 205–6 definition covers territory clearly governed by § 4911, not § 4926. In any event, provisions substantively identical to § 4926 apply to all three of Delaware's counties, and there is no reason to believe that, in enacting provisions like §§ 4911 and 4926, the General Assembly intended these statewide statutes to be imbued, implicitly, with a Kent County imprint drawn from § 205–6 of the Kent County Code.

For all these reasons, I conclude that the Challenged Ordinances did not involve a "proposed zoning change" within the meaning of 9 Del. C. § 4926, and therefore Published Notice under § 4911 was sufficient.

### C. Kent County Code § 205–410

■ Ashburn also urges that Kent County had to provide both Posted Notice and Individual Notice to adjacent property owners under Kent County Code § 205–410. But, I find that § 205–410 is textually ambiguous as to when Individual or Posted Notice is required. And, Kent County, which enacted the Kent County Code in the first place and is charged with that Code's enforcement, has reasonably and consistently interpreted § 205–410 as only requiring Individual or Posted Notice for Classification Changes.[32] For Generally Applicable Changes, Kent County does not read § 205–410 as requiring Individual or Posted Notice.[33] And, importantly, this is not a case where Kent County was interpreting a statute passed by a superior legislative body (i.e., the General Assem-

---

**30.** 2007 WL 1651931, at *6.

**31.** Kent County Code § 205–6.

**32.** *See* Respondents' Ans. Br. Ex. 5 ¶¶ 10–11. Ashburn has not alleged facts challenging the Levy Court's claim that it has consistently applied this interpretation.

There is some ambiguity, however, as to whether Kent County's interpretation is entirely co-extensive with what I have defined as Classification Changes, specifically whether Kent County interprets § 205–410 as requiring Individual and Posted Notice whenever the County creates an overlay district that imposes different regulations on identically zoned properties depending on whether or not they are within the overlay. Such regulations present something of a distinct question because they make large scale changes, and so are not site specific, but they typically also only apply to a subset of properties within a zoning classification. How such changes are regulated by the Kent County Code, however, is not a question before me now. Rather, the key point for present purposes is that under Kent County's interpretation, Generally Applicable Changes like the Challenged Ordinances do not necessitate Individual or Posted Notice.

**33.** *Id.* ¶¶ 9–11.

bly), rather Kent County was interpreting regulations that its Levy Court enacted. As a result, the County's interpretation of § 205–410 is entitled to deference.[34] Accordingly, I adopt Kent County's reasonable interpretation of the Code it enacted and find that Individual and Posted Notice were not required under § 205–410.

The controversy in this instance centers on Article XXVIII of the Kent County Code, which governs "Changes and Amendments."[35] Under that Article, the Levy Court has broad power to change the overall zoning plan in Kent County, including the ability to make both Classification and Generally Applicable Changes. Sections 205–409 and 205–410 provide notice and hearing requirements for enacting these changes. First, § 205–409 specifies that before Kent County can modify its zoning regulations, the Planning Commission must report on the proposed changes.[36] In such situations, § 205–410(A) sets out that the Planning Committee must hold a hearing and provide notice:

> The Planning Commission shall hold a public hearing thereon, before submitting its report to the Levy Court. At least 30 days before the hearing, the Planning Commission shall send written notice of the hearing to owners of properties adjacent to the proposed change and to any neighborhood associations serving the affected area. Notice to the general public of the public hearing before the Commission shall be given by publishing the date, time, place and nature of the hearing at least 15 days before the date, time, place and nature

of the hearing to be posted conspicuously *on the property* in accordance with the rules of the Commission.[37]

Ashburn has not disputed that there was an appropriate hearing on the Challenged Ordinances. It argues, however, that Kent County did not provide adequate notice of that hearing. The problem here is that § 205–410 invokes all three types of notice, discussing Published Notice, Individual Notice to owners of properties adjacent to any proposed change as well as neighborhood associations, and Posted Notice. But, neither § 205–410 nor any other part of the Kent County Code specifies when each type of notice is required. In this absence, Ashburn urges that § 205–410 can only reasonably be read as applying to every zoning-related change on which the Planning Committee must hold a hearing. That is to say, for any change to the Kent County Code, regardless of whether the change is one of Classification or a Generally Applicable one, Ashburn says that Kent County must not only publish the proposed changes in the newspaper and send Individual Notice to adjacent property owners but also *post notice on every affected property.* Although this would be an extremely burdensome requirement with no apparent justification, on a purely textual level it is, I suppose, barely possible read to § 205–410 that way, although the use of the words "the property" and the nature of property-specific posting do not easily co-exist with Ashburn's contention.

But, even if Ashburn's construction has some dim color there is, as the Levy Court points out, another, more reasonable way

**34.** *DiPasquale,* 735 A.2d at 383 n. 9 ("[A] reviewing court may be expected to defer to the construction placed by an administrative agency on regulations promulgated or enforced by it, unless shown to be clearly erroneous.").

**35.** Kent County Code Art. XXVIII.

**36.** Kent County Code § 205–409.

**37.** Kent County Code § 205–410 (emphasis added).

to read § 205–410. Specifically, the Levy Court has consistently interpreted § 205–410 as calling for two different approaches to notice: (1) when Classification Changes are proposed, Posted Notice must be provided and Individual Notice must be sent to adjacent property owners and neighborhood associations; and (2) when Generally Applicable Changes are proposed, only Published Notice is required.[38] As § 205–410 itself provides no guidance on when its provisions apply, this is, in my view, a reasonable interpretation of what even the Levy Court admits is a vaguely worded statutory provision.[39]

That reading makes particular sense in light of the fact that parts of § 205–410 clearly contemplate only Classification Changes.[40] Like § 4926, § 205–410 refers to adjacent properties, requiring Individual Notice to "owners of properties adjacent to the proposed change and to any neighborhood associations serving the affected area." As already discussed, the interests of adjacent property owners in receiving Individual Notice are more substantial in the case of localized changes like a rezoning than in the case of Generally Applicable Changes.

And, § 205–410's mention of Posted Notice reinforces Kent County's contention that parts of § 205–410 only apply to Classification Changes. Although Kent County could conceivably require Posted Notice on every property every time there is a Generally Applicable Change, it is hard to believe that this is what Kent County actually intended. Instead, Posted Notice is more consistent with small scale changes in which the County seeks to let neighboring property owners know of a proposed change affecting only their neighborhood so that those owners have a chance to make their voices heard. Doing so creates heightened notice where there is less protection available through the broader political system and the press. In addition, as Ashburn admitted at oral argument, there is some "absurdity" in reading § 205–410 as providing for both Individual and Posted Notice whenever Kent County makes changes in zoning regulations.[41]

■ ■ In situations like this one, where a party is challenging a county's reasonable interpretation of a code that county enacted, Delaware courts properly defer to the county's interpretation of its own code.[42] And, that deference is only more appropriate in a situation like this one, where the county's consistent, long-standing interpretation is being challenged.[43]

---

**38.** *See generally* Respondents' Ans. Br. Ex. 5 ¶¶ 7, 10–11.

**39.** *See* Respondents' Ans. Br. at 24.

**40.** *Farmers for Fairness v. Kent County* 2007 WL 1413247, at *8 n. 35 (Del.Ch. May 1, 2007) ("[Section 205–410] obviously contemplate[s] the small-scale redistricting of relatively few parcels, not the imposition of broad regulations upon much larger areas."), *aff'd,* 940 A.2d 945 (Del.2007).

**41.** Tr. at 66.

**42.** *DiPasquale,* 735 A.2d at 383 n. 9 ("Similarly, a reviewing court may be expected to defer to the construction placed by an administrative agency on regulations promulgated or enforced by it, unless shown to be clearly erroneous."); *BC Dev. Assocs.,* 567 A.2d at 1275 ("[I]n the realm of rezoning, the power of Council is analogous to that of an administrative agency, since the fundamental power to regulate land use rests with the General Assembly."); *Green v. Sussex County,* 668 A.2d 770, 775 (Del.Super.1995) ("The Court should also give deference to the Sussex County Council's interpretation of its own ordinance, at least in respect to divining its intent when it was adopted."), *aff'd,* 667 A.2d 1319 (Del.1995).

**43.** *DiPasquale,* 735 A.2d at 383 n. 8 (noting that even when an agency is interpreting a statute that it did not enact, "where an agency interpretation is longstanding and widely

To the extent that Ashburn or other property owners object to Kent County's reasonable approach to implementing the notice procedures in § 205–410, those objections should be raised with the Levy Court itself. In that way, the residents of Kent County can seek to have the Levy Court adopt a new ordinance providing greater notice of Generally Applicable Changes and ensure accountability through the political process, where such policy questions are properly decided. Because Kent County has reasonably interpreted its own Ordinance, the judiciary may not intercede.

Therefore, I find that Kent County did not have to provide Individual or Posted Notice of the Challenged Ordinances and that those Ordinances are not invalid on the basis that no such Notice was provided.

## IV. Conclusion

For the foregoing reasons, J.N.K., LLC and Tony Ashburn & Son, Inc.'s motion for summary judgment is denied. The respondents' motion for summary judgment is granted. The parties shall submit a conforming order in ten days. IT IS SO ORDERED.

enforced, a reviewing court would ordinarily accord greater weight to the underlying agency interpretation of the statute in determining, for itself, the optimal interpretation"); *State ex rel. Zebley v. Mayor & Council of Wilmington*, 163 A.2d 258, 264 (Del.1960) (relying on "the principle of statutory construction that where a statute is doubtful or ambiguous in its terms, a practical administrative interpretation over a period of time, if founded upon plausibility, will be accepted by the courts as indicative of the legislative intent").